UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.

HECTOR GONZALEZ MICHEL,
　　　Defendant.

Criminal Case No. 22-CR-125-JJM

**SENTENCING MEMORANDUM**

On December 9, 2025, Defendant entered a plea to conspiracy to distribute 500 grams or more of methamphetamine and possession with the intent to distribute 500 grams or more of methamphetamine.  The United States and submits this sentencing memorandum in support of its sentencing recommendation for the Defendant.

Pursuant to 18 U.S.C. §3553(a), the court must impose a sentence sufficient but not greater than necessary to reflect the seriousness of the offense, to deter criminal conduct, to protect the public, and to provide the Defendant with education or vocational training, medical care and other correctional treatment.  Factors that the court must consider are set forth in 18 U.S.C. 3553(a) and include the nature and circumstances of the offense and history and characteristics of the Defendant, the need for the sentence imposed, the kind of sentences available, the kinds of sentence and the sentencing range established the offense, pertinent policy statements, the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct, and the need for restitution for victims. The United States will focus its argument mainly

1

on the Nature and Circumstances of the Offense and the History and Characteristics of the Offender.

<u>Nature and Circumstances of the Offense</u>

On December 9, 2025, the Defendant possessed with the intent to distribute 1,459 grams of methamphetamine, 3.21 pounds of the drug, with an estimated 86% substance purity level.   He was on his way to sell three and one half pounds of methamphetamine or "crystal meth" to dealer who, in turn, was due to sell the substance to a Rhode Island based dealer.

As this court is aware, drug trafficking is prevalent in Rhode Island.  At present, most of the drug trafficking cases brought before this Court involve illicit fentanyl and powder cocaine.  In the not so distant past, it was cocaine base and heroin.  Until recently, large methamphetamine seizures and resulting prosecutions  were common in other parts of the United States, but not typically in Rhode Island.[1]    It is clear now, that methamphetamine has made it to the District, Rhode Island has a meth problem.

Methamphetamine is a highly addictive Schedule II stimulant.  When used as a legal prescribed medication, it is sold under the name Desoxyn,  marketed in 5 milligram tablets and is used to treat obesity and attention deficit hyperactivity disorder (ADHD).[2]

---

[1] One of the most significant seizures in RI history was of approximately 600 lbs. of fake Adderall pills laced with methamphetamine powder was recorded in early 2022.  Tom Mooney, Cumberland man to plead guilty in largest US seizure of meth-laced fake Adderall pills, Providence Journal (Sept. 19, 2022) https://www.providencejournal.com/story/news/local/2022/09/19/dea-agents-seize-600-pounds-fake-adderall-pills-ri-man-pleads-guilty-laced-with-methamphetamine/10425908002/
[2] Department of Justice/Drug Enforcement Administration Drug Fact Sheet, April 2020, https://www.dea.gov/sites/default/files/2025-01/Methamphetamine-Drug-Fact-Sheet.pdf, last visited March 2, 2026.

Illicit methamphetamine found in the United States is primarily produced by Mexican drug trafficking organizations[3], some is  produced in clandestine labs in the US.[4]

Domestic illicit meth is made from "pseudoephedrine, or ephedrine, commonly found in cold medicine."[5]    Meth coming in from Mexico is commonly made from precursor chemicals from China.[6]  According to the Drug Enforcement Administration (DEA) and the Substance Abuse and Mental Health Services Administration (SAMHSA) Methamphetamine or "meth" can be smoked, snorted, injected or taken orally in pill and powder form.[7]  Methamphetamine is commonly referred to in street terms as "Batu, Bikers Coffee, Black Beauties, Chalk, Chicken Feed, Crank, Crystal, Glass, Go-Fast, Hiropon, Ice, Meth, Methlies Quick, Poor Man's Cocaine, Shabu, Shards, Speed, Stove Top, Tina, Trash, Tweak, Uppers, Ventana, Vidrio, Yaba, Yellow Barn" and referred to in drug transactions in other coded language.

The short term effects of meth include "increased blood pressure and body temperature, faster breathing, loss of appetite, disturbed sleep, nausea, and erratic,

---

[3] Department of Justice/Drug Enforcement Administration Drug Fact Sheet, April 2020, https://www.dea.gov/sites/default/files/2025-01/Methamphetamine-Drug-Fact-Sheet.pdf, last visited March 2, 2026.

[4] National Drug Intelligence Center, Methamphetamine Drug Threat Assessment March 2005, https://www.justice.gov/archive/ndic/pubs13/13853/product.htm, last visited March 2, 2026; United States Department of Justice Archive, Meth Awareness https://www.justice.gov/archive/olp/methawareness/#made, last visited March 2, 2026.

[5]  United States Department of Justice Archive, Meth Awareness https://www.justice.gov/archive/olp/methawareness/#made, last visited March 2, 2026.
 last visited March 3, 2026; https://www.dea.gov/sites/default/files/2020-06/Methamphetamine-2020_0.pdf, last visited March 3, 2026.

[6] Sean O'Connor, Policy Analyst, Economics and Trade, U.S.-China Economic and Security Review Commission, Meth Precursor Chemicals from China: Implications for the United States, July 18, 2016, p. 5, https://www.uscc.gov/research/meth-precursor-chemicals-china-implications-united-states, last visited March 3, 2026.

[7] Department of Justice/Drug Enforcement Administration Drug Fact Sheet, April 2020, https://www.dea.gov/sites/default/files/2025-01/Methamphetamine-Drug-Fact-Sheet.pdf last visited March 2, 2026; SAMHSA, Substance Abuse and Mental Health Services Administration, Stimulants, last updated November 7, 2024, https://www.samhsa.gov/substance-use/learn/stimulants, last visited March 3, 2026.

aggressive, irritable, or violent behavior."[8]  Chronic use can be devastating.  Long term use, "even when people stop taking meth, include: "permanent damage to the heart"; "high blood pressure leading to heart attacks, strokes, and death"; "liver, kidney, and lung damage"; "anxiety, confusion and insomnia"; "paranoia, hallucinations, mood disturbances, delusions or violent behavior (psychotic symptoms can sometimes last for months or years after meth use)";  "intense itching, causing skin sores from scratching"; "premature osteoporosis" ; and "severe dental problems".[9]  Long term effects may also include "damage to the brain structure similar to Alzheimer disease, epilepsy, and stroke".[10]

History and Characteristics of the Defendant

This is not the Defendant's first venture into drug dealing.   When arrested, the Defendant was provided with his Miranda warnings.   He was cooperative with law enforcement, provided them with his passcode to his phone, and allowed them to look in his phone.  He admitted that he received  large quantities of crystal meth from Mexico, that it was mailed to the Northeast and that someone would pick it up and drive it to him.  He indicated that he would typically receive twenty pounds at a time and could negotiate for 80 pound deliveries.[11]  He told law enforcement that he had been receiving

---

[8] SAMHSA, Substance Abuse and Mental Health Services Administration, Stimulants, last updated November 7, 2024, https://www.samhsa.gov/substance-use/learn/stimulants, last visited March 3, 2026.

[9] SAMHSA, Substance Abuse and Mental Health Services Administration, Stimulants, last updated November 7, 2024, https://www.samhsa.gov/substance-use/learn/stimulants, last visited March 3, 2026.

[10] Preeti Patel; Abddolreza Saadabadi; StatPearls, Methamphetamine, National Library of Medicine, National Center for Biotechnology, https://www.ncbi.nlm.nih.gov/books/NBK535356/, last updated December 13, 2025, last visited March 3, 2026.

[11] At the time of this arrest, the price of methamphetamine was between $4,000 and $5,000 per pound, the price has decreased since that time.

large quantities of fentanyl which he sold, but that there was so much fentanyl in the area, he shifted because of the demand for meth.   He admitted that he had come to the location in Boston for the purpose of delivering 3.4 pounds of crystal meth.

The government does not refute the Defendant's self-reports of his childhood, his residential history or mental and emotional health.  These are self-reports which are almost impossible for the government to verify.   There is important information that the court should consider which the Defendant self-reported.  By his own admissions, Defendant knew the value of a job.  He was perfectly capable of working for a living.  He held jobs at Fed Ex, and in asbestos removal (a job in which he was promoted to supervisor).   PSR ¶ 44, 45.  He was skilled in property rehab and was prepared to start a real estate company.  PSR ¶ 45.  He was not addicted to drugs nor alcohol.  PSR ¶ 63. He was making approximately $1,200 per week at the time of his arrest.  PSR ¶ 64.  He was 31 years old, not someone who had barely achieved adulthood.

He took a risk selling drugs, presumably out of greed, and after he had been incarcerated for drug dealing.  He knew that drugs would separate him from his family, from his children, yet, he made the choice to be involved, to be a dealer, and to peddle this poison to society.

He enjoyed the game; he enjoyed the money.  See below photographs from Defendant's phone, showing the drugs, showing the money, and a small child, with wads of money.  What a terrible example he set for a child in this instance.



Photos from Defendant's phone depicting what appears to be consistent with either methamphetamine powder or fentanyl, Defendant with piles of drug money.



Drug proceeds and small child playing with stacks of drug proceeds.

Despite some childhood trauma, he has positive role models, brothers and sisters who are employed (welder, hotel worker and medical field), and chose to take a different path.

Defendant's guideline range is 121-151, with a minimum mandatory range of 124. A sentence that the court imposes within the range is a sufficient sentence. It will keep the public safe from the Defendant's drug dealing, his chosen career. A lengthy sentence is necessary for individual deterrence, serves as just punishment. The government recommends a sentencing in the middle of the guideline range, taking into consideration the reality that the Defendant, a previously convicted drug offender- who had served

time and had a pending drug charge at the time of his arrest, was dealing large quantities

of fentanyl as well as methamphetamine.

Respectfully submitted,

/s/Stacey A. Erickson

_____

STACEY A. ERICKSON
Assistant U.S. Attorney
U.S. Attorney's Office
One Financial Plaza, 17th FL
Providence, RI 02903
Tel (401) 709-5032
Fax (401) 709-5001
Email:  stacey.erickson@usdoj.gov

## CERTIFICATION OF SERVICE

On this 3rd day of March, 2026, I caused the within Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

/s/ Stacey A. Erickson

_____

Stacey A. Erickson
Assistant U.S. Attorney
U.S. Attorney's Office
One Financial Plaza, 17th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Stacey.erickson@usdoj.gov